No. 14-1554

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

SUNTRUST MORTGAGE, INC.,

*Plaintiff-Appellee,*

v.

UNITED GUARANTY RESIDENTIAL INSURANCE COMPANY
OF NORTH CAROLINA,

*Defendant-Appellant.*

On Appeal From The United States District Court
For The Eastern District Of Virginia

## OPENING BRIEF OF APPELLANT UNITED GUARANTY RESIDENTIAL INSURANCE COMPANY OF NORTH CAROLINA

William E. Wegner
Christopher D. Dusseault
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

Thomas H. Dupree, Jr.
Philip S. Alito
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
(202) 955-8500

Wyatt B. Durrette, Jr.
J. Buckley Warden IV
DURRETTECRUMP PLC
1111 E. Main Street, 16th Floor
Richmond, VA 23219
(804) 775-6900

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Appellant United Guaranty Residential Insurance Company of North Carolina makes the following disclosure:

1.    Is the party a publicly held corporation or other publicly held entity?

   **NO.**

2.    Does the party have any parent corporations?

   **YES.**

   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

   **American International Group, Inc.**

3.    Is 10% or more of the stock of the party owned by a publicly held corporation or other publicly held entity?

   **YES.**

   If yes, identify all such owners:

   **American International Group, Inc.**

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?

   **NO.**

5.    Is the party a trade association?

   **NO.**

6.    Does this case arise out of a bankruptcy proceeding?

   **NO.**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................1

STATEMENT OF JURISDICTION......................................................5

STATEMENT OF THE ISSUES..........................................................6

STATEMENT OF THE CASE..............................................................6

STATEMENT OF FACTS ...................................................................7

     1.    At SunTrust's Request, United Guaranty Agrees
              To Let SunTrust Pay For Insurance Coverage Through
              Installment Payments. .................................................................7

     2.    The District Court Finds That SunTrust Perpetrated
              A Fraud On The Court—But Then Grants SunTrust
              Summary Judgment On Its Breach-Of-Contract Claim.............9

     3.    The District Court Grants Summary Judgment To United
              Guaranty On Its Counterclaim—But Then Withdraws
              The Ruling And Grants Summary Judgment To SunTrust
              Based On An Overlooked "First Material Breach" Defense. ....9

     4.    This Court Affirms The Breach-Of-Contract Ruling
              And Vacates The First Material Breach Ruling. ....................13

     5.    Despite SunTrust's Failure To Raise The Argument
              On Appeal, The District Court Enters Judgment For
              SunTrust On The Theory That The Breach Of Contract,
              Standing Alone, Is A First Material Breach. ..........................15

SUMMARY OF ARGUMENT ...........................................................17

STANDARD OF REVIEW ...............................................................21

ARGUMENT ..................................................................................21

I.   The Mandate Rule Forecloses The District Court's
     Reinstatement Of The Vacated Judgment..........................................21

     A.   SunTrust Failed To Argue In The Prior Appeal That The
          Breach Of Contract Finding, Standing Alone, Amounted
          To A First Material Breach. ......................................................22

     B.   This Court Necessarily Determined In The Prior Appeal
          That The Breach Of Contract, Standing Alone, Was Not
          A First Material Breach. ...........................................................27

II.  Even If The First Material Breach Issue Remains Open,
     United Guaranty Is Entitled To Judgment. ......................................31

     A.   There Was No First Material Breach Because The
          Insurance Contract Is Severable................................................31

     B.   Even If The Contract Were Not Severable, The District
          Court Erred In Ruling That The Breach Was Material............36

III. If This Court Were To Affirm The First Material Breach
     Judgment, SunTrust's Damages Award Must Be Reduced
     By The Amount Of The Premiums It Is Excused From Paying. .......43

     A.   A Breach-Of-Contract Damages Award Must Be
          Reduced By Any Savings The Plaintiff Realized
          As A Result Of The Breach. .....................................................46

     B.   SunTrust's Damages Must Be Reduced By The Amount
          Of Premiums It No Longer Has To Pay. .................................48

CONCLUSION ..........................................................................................51

REQUEST FOR ORAL ARGUMENT ..................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ceres Assoc. Sales & Mktg. v. Veridian Corp.*,
   No. 208217, 2003 WL 22785037 (Va. Cir. Ct. Oct. 16, 2003)...........................47

*Doe v. Chao*,
   511 F.3d 461 (4th Cir. 2007) ........................................................... 21, 22, 23, 30

*E. Augusta Mut. Fire Ins. Co. v. Hite*,
   250 S.E.2d 348 (Va. 1979) .................................................................. 18, 33, 34

*First Nat'l Bank of Louisville v. Master Auto Serv. Corp.*,
   693 F.2d 308 (4th Cir. 1982) ...............................................................49

*Hess Energy, Inc. v. Lightning Oil Co.*,
   338 F.3d 357 (4th Cir. 2003) ...............................................................46

*Hiss v. Friedberg*,
   112 S.E.2d 871 (Va. 1960) ...............................................................45

*Holz v. Coates Motor Co.*,
   147 S.E.2d 152 (Va. 1966) ...............................................................45

*Horton v. Horton*,
   487 S.E.2d 200 (Va. 1997) ........................................................... 36, 38

*Jennings v. University of North Carolina*,
   482 F.3d 686 (4th Cir. 2007) ...............................................................28

*Kirk Reid Co. v. Fine*,
   139 S.E.2d 829 (Va. 1965) ........................................................... 47, 51

*Lovelace v. Lee*,
   472 F.3d 174 (4th Cir. 2006) ...............................................................28

*Marefield Meadows, Inc. v. Lorenz*,
   427 S.E.2d 363 (Va. 1993) ...............................................................46

*Neely v. White*,
  14 S.E.2d 337 (Va. 1941) ...................................................... 19, 36, 37, 38, 40, 41

*Psychiatric Solutions of Va., Inc. v. Finnerty*,
  676 S.E.2d 358 (Va. Ct. App. 2009) ...................................................42

*Q Int'l Courier, Inc. v. Smoak*,
  441 F.3d 214 (4th Cir. 2006) ..............................................................28

*Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise*,
  239 F.2d 689 (4th Cir. 1956) ..............................................................44

*Roanoke Cement Co. v. Falk Corp.*,
  413 F.3d 431 (4th Cir. 2005) ..............................................................21

*S. Atl. Ltd. P'ship of Tenn., LP v. Riese*,
  356 F.3d 576 (4th Cir. 2004) ...................................................... 17, 21, 22, 23, 27

*Sunrise Continuing Care, LLC v. Wright*,
  671 S.E.2d 132 (Va. 2009) ..................................................................50

*SunTrust Mortgage, Inc. v. United Guaranty Residential Ins. Co. of N.C.*,
  508 Fed. App'x 243 (4th Cir. 2013) .......................... 1, 2, 3, 13, 14, 17, 20, 29, 30

*Sweeney Co. of Md. v. Engineers-Constructors, Inc.*,
  823 F.2d 805 (4th Cir. 1987) ..............................................................47

*Tower Cleaning Servs., Inc. v. ePlus Grp., Inc.*,
  No. 209993, 2003 WL 1563440 (Va. Cir. Ct. Feb. 20, 2003) ..................... 45, 47

*United Guaranty Mortgage Indemnity Co. v. Countrywide Financial Corp.*,
  660 F. Supp. 2d 1163 (C.D. Cal. 2009)........................................... 32, 34

*United States v. Bell*,
  5 F.3d 64 (4th Cir. 1993) ....................................................................21

*United States v. Ben Zvi*,
  242 F.3d 89 (2d Cir. 2001) ................................................................23

*United States v. Pileggi*,
  703 F.3d 675 (4th Cir. 2013) ..............................................................26

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
  618 F.3d 417 (4th Cir. 2010) .................................................................21

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
  510 F.3d 474 (4th Cir. 2007) ................................................................26

**Statutes**

28 U.S.C. § 1291 ....................................................................................5

28 U.S.C. § 1332 ....................................................................................5

**Other Authorities**

2 *Couch on Insurance* (3d ed.) ......................................................... 31, 33

24 Richard A. Lord, *Williston on Contracts* (4th ed. 2002) ...................46

II E. Allan Farnsworth, *Farnsworth on Contracts* (3d ed. 2004) .............. 40, 42, 47

Restatement (Second) of Contracts................................. 37, 41, 42, 46, 47

# INTRODUCTION

This is an insurance dispute in which SunTrust Mortgage is seeking approval of a $92 million windfall based on a theory that was foreclosed by this Court's prior decision in this case. *See SunTrust Mortgage, Inc. v. United Guaranty Residential Ins. Co. of N.C.*, 508 Fed. App'x 243 (4th Cir. 2013).

At the heart of this case is a contract in which United Guaranty agreed to insure certain SunTrust mortgage loans. For its part, SunTrust agreed to pay premiums to United Guaranty through a series of installment payments over the life of the loans. The parties performed under the contract for eight years, but at that point a dispute emerged. SunTrust claimed that United Guaranty breached the contract by declining to provide coverage for certain loans, and took the position that it was no longer required to pay the installment premiums. United Guaranty denied that it had breached the contract and counterclaimed for a declaratory judgment that the contract obligated SunTrust to continue paying $92 million in installment premiums.

The district court granted summary judgment to SunTrust on its breach-of-contract claim, awarding SunTrust $40 million. JA279-301. With regard to United Guaranty's counterclaim, the district court ruled that the contract's plain language "clearly and unambiguously" required SunTrust to continue paying installment premiums. JA293. But after initially granting United Guaranty a

declaratory judgment on this claim, the court revisited the issue, withdrew its order, and decided that although the contract obligated SunTrust to continue paying the premiums, United Guaranty had lost its right to obtain a declaratory judgment because it had committed a "first material breach" under Virginia law. The court based its first material breach finding on "the combined [ ] effect" of (1) United Guaranty's breach of the contract's express terms (the "breach-of-contract finding") and (2) its breach of the implied covenant of good faith and fair dealing. JA1183 & n.64. Taken together, the district court held, these two breaches added up to a first material breach by United Guaranty that excused SunTrust from what the court had determined was its clear legal obligation under the contract to continue paying installment premiums.

On appeal, United Guaranty challenged the breach-of-contract finding, as well as the first material breach ruling. This Court affirmed the breach-of-contract finding over a dissent by Judge Bredar. *See* 508 Fed. App'x 243. With regard to the first material breach ruling, United Guaranty argued that the district court's decision rested on the combined effect of the two breaches—and that neither finding of breach was sustainable. In response, SunTrust did not dispute that both breaches were necessary to sustain the judgment. Although SunTrust defended the two breach findings on their merits, it did *not* argue that either breach, standing alone, could amount to a first material breach.

This Court vacated the district court's judgment on first material breach. The Court held that the district court had erred in concluding that United Guaranty had breached the implied covenant of good faith and fair dealing. Because SunTrust had not argued that the breach-of-contract finding, standing alone, could support the first material breach judgment, this Court did not address United Guaranty's arguments as to why the breach of contract was not a first material breach. Instead, having resolved the issue, the Court simply ended its analysis and did not remand for further proceedings on first material breach. *See* 508 Fed. App'x at 251-54.

Once this Court issued its mandate, United Guaranty moved the district court to enter final judgment in its favor on the counterclaim. Because the district court had previously granted United Guaranty a declaratory judgment that the plain language of the contract "clearly and unambiguously" required SunTrust to continue paying premiums—and because this Court had rejected the only reason the district court gave for withdrawing the declaratory judgment (the first material breach defense)—United Guaranty asked the district court to perform what should have been the ministerial act of entering judgment on the counterclaim based on this Court's mandate.

But at that point, SunTrust raised an argument it had failed to make in this Court—that the breach-of-contract finding, standing alone, amounted to a first

3

material breach, and that the district court should simply reinstate the vacated first material breach judgment on that basis. United Guaranty strongly objected, pointing out that the district court could not reinstate a judgment that the Fourth Circuit had just vacated based on an argument that SunTrust failed to present to the court of appeals. The district court disagreed. It reinstated the first material breach judgment on the theory that the breach-of-contract finding by itself was a first material breach. JA1476-1505.

That ruling should be reversed for three reasons. *First*, the district court's reinstatement of the first material breach judgment violates the mandate rule, which prohibits district courts from considering arguments that were waived in the court of appeals *or* that were resolved (expressly or impliedly) by the appellate court. *Second*, even if it were permissible for the district court to have considered SunTrust's argument, the district court erred in finding a first material breach. The insurance contract is severable on a loan-by-loan basis, which means that a breach as to one loan does not void the parties' obligations as to the thousands of other loans covered by the contract. Moreover, the breach was not material in any event. United Guaranty had already paid hundreds of millions of dollars to SunTrust under the contract; the breach involved only a very small fraction of all the loans the contract encompassed; and the harm to SunTrust was fully compensable through an award of money damages. *Third*, even if this Court were to affirm the

first material breach judgment, SunTrust's breach-of-contract damages would then need to be reduced by the amount of the installment premiums that SunTrust would be excused from paying.

The district court approved a bizarre and unsustainable result. By awarding SunTrust breach-of-contract damages while excusing it from paying future installment premiums, the district court held that SunTrust was entitled simultaneously to *enforce* the contract to the extent it benefited SunTrust and *nullify* the contract to the extent it benefited United Guaranty, enabling SunTrust to reap all the benefits of the contract without having to perform its obligations under the contract. The result violates one of the most fundamental principles of contract law: that damages in a contract case should place the non-breaching party only in as good a position as he would have been in had the contract been performed. A damages award should not put the non-breaching party in a far *better* position, yet that is precisely what occurred here.

The district court's decision to grant a lottery-like windfall to SunTrust should be reversed.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000. This Court has jurisdiction under 28 U.S.C. § 1291, as this appeal arises from a final judgment

filed June 3, 2014.  JA1508-09.  United Guaranty timely noticed an appeal on June 6, 2014.  JA1510-11.

## STATEMENT OF THE ISSUES

I.      Whether the mandate rule barred the district court from reinstating its judgment on the theory that United Guaranty's breach of contract, standing alone, amounted to a "first material breach."

II.     Whether the district court's first material breach ruling was erroneous because the insurance policy is severable and because the breach was not material in any event.

III.    Whether, if the first material breach determination is affirmed, SunTrust's breach-of-contract damages award must be reduced by the amount of installment premiums SunTrust is excused from paying.

## STATEMENT OF THE CASE

SunTrust filed this action on July 16, 2009, JA79, and its Third Amended Complaint (the operative version) on May 27, 2010.  JA147.  United Guaranty filed its counterclaim on December 14, 2009.  JA113.  The district court granted SunTrust judgment on United Guaranty's claim for a declaratory judgment—Count IV of United Guaranty's counterclaim—on March 13, 2014.  JA1459-75, 1476-1505.  The court entered final judgment on June 3, 2014.  JA1508-09.

## STATEMENT OF FACTS

**1.    At SunTrust's Request, United Guaranty Agrees To Let SunTrust Pay For Insurance Coverage Through Installment Payments.**

SunTrust issues mortgage loans on residential real property.  JA1123.  In 1998, SunTrust and United Guaranty signed a contract under which United Guaranty agreed to provide insurance coverage for certain SunTrust loan products in the event that the underlying loans defaulted.  JA170.  The loans at issue are known as "IOF Combo 100 loans," which are second-lien loans with an interest-only option.  The loans were grouped into pools based primarily on the year they were issued, and each pool was subject to a Maximum Cumulative Liability ("MCL") limit—the maximum amount in claims that United Guaranty could be required to pay for that pool.  JA176 § 1.26.

Rather than pay for the insurance through a single lump-sum payment upfront, as is typical, SunTrust asked, and United Guaranty agreed, that SunTrust be allowed to pay premiums in installments.   JA296 (SunTrust "had the option of paying a 'single lump sum premium' to insure its loans, but [SunTrust] chose to forego this option and pay premiums in annual installments."); JA180 §§ 3.3, 3.4.  United Guaranty and SunTrust also agreed to a "delegated underwriting" approach.  Under such an approach, the insured—not the insurer—conducts the underwriting in the first instance.  It is the insured's obligation to check that each loan meets the

insurer's underwriting guidelines and thus qualifies for coverage.  JA460-63.  If the insured determines that a loan qualifies, it begins paying insurance premiums to the insurer.  If and when the insured later submits a claim on a defaulted loan, the insurer confirms that the loan meets the insurer's underwriting guidelines so that coverage exists.  JA463-64.  If coverage exists, the insurer pays a claim to the insured.  If coverage does not exist, the insurer notifies the insured, returns any premiums paid by the insured on that loan, and deducts a proportion of the loan amount from the MCL.

For eight years, United Guaranty paid SunTrust hundreds of millions of dollars under the contract.  JA122, 531-32.  Then, in 2006 and again in 2007, United Guaranty advised SunTrust that a small number of loans were not covered by the policy because they had not been approved through Desktop Underwriter ("DU")—an automated underwriting program developed by Fannie Mae that aggregates data from millions of loans to enable the user to identify the default risk of any individual loan.  JA133.  Although SunTrust initially conceded that these loans were not covered, JA133, it changed its stance after it began experiencing high default rates on the underlying mortgages, and took the position that the loans did not need DU approval in order to be covered, JA84.

8

2. **The District Court Finds That SunTrust Perpetrated A Fraud On The Court—But Then Grants SunTrust Summary Judgment On Its Breach-Of-Contract Claim.**

At this point, as the district court later found in its ruling on United Guaranty's motion for sanctions, SunTrust engaged in a scheme to doctor evidence in an effort to support its position that there was no DU approval requirement. JA208-14.  When SunTrust's in-house lawyers learned of the scheme, they worked to cover up the misconduct.  JA218-21.

SunTrust filed its lawsuit for breach of contract, produced many doctored emails in discovery, and filed an amended complaint that cited one of the forgeries. Once SunTrust's wrongdoing came to light, the district court issued an order finding that SunTrust had perpetrated a "fraud on the court."  JA244.

 But, rather than dismiss SunTrust's complaint, the district court granted summary judgment to SunTrust on its breach-of-contract claim and awarded SunTrust $40 million in damages and prejudgment interest.  JA1208, 1233.   The court held that the insurance policy did not unambiguously provide that the loans be DU approved as a condition for coverage.  JA1268, 1345.

3. **The District Court Grants Summary Judgment To United Guaranty On Its Counterclaim—But Then Withdraws The Ruling And Grants Summary Judgment To SunTrust Based On An Overlooked "First Material Breach" Defense.**

United Guaranty counterclaimed for a declaration that SunTrust was obligated to continue paying premiums for the life of the contract even after United

9

Guaranty had reached the MCL for the applicable loan pool.  JA144

(Counterclaim, Count IV).  SunTrust took the position that once the MCL had been

reached for a given loan pool, it was not required to pay any more premiums for

any of the loans in that pool.  JA284.

　　　The district court initially granted summary judgment on this claim to

United Guaranty.  It explained in a 23-page opinion that the insurance policy

"clearly and unambiguously obligates [SunTrust]" to continue paying premiums,

and stated that "[SunTrust's] position distorts the terms of the insurance policy"

and "offends fundamental precepts of Virginia contract law."  JA293, 300.

SunTrust was required to continue paying premiums even after the MCL had been

reached, the district court explained, because SunTrust had chosen to forgo "the

option of paying a 'single lump sum premium' to insure its loans," and had instead

opted to "pay premiums in annual installments."  JA296.  Thus, "even when the

MCL is met for [SunTrust's] loans, and therefore [United Guaranty] is not

obligated to cover further losses on such loans, [SunTrust] is still paying

'premiums' on such loans.  Specifically, it is paying the premiums in installments

that it agreed to pay in accordance with the rate structure in the [insurance

contract]."  JA300.

　　　But after granting summary judgment to United Guaranty on its

counterclaim, the court did an about-face.  It announced that it had overlooked

SunTrust's affirmative defense of "first material breach."  JA302-03.  According to SunTrust, United Guaranty had committed a first material breach of the insurance policy, thereby excusing SunTrust from its obligation to continue paying premiums.  Although the district court did not change its view that the policy's clear and unambiguous language required SunTrust to continue paying premiums even after the MCL was met, the court nonetheless withdrew its grant of summary judgment and convened a bench trial on the first material breach defense.  JA302.

The trial focused on whether United Guaranty had committed a first material breach by failing to pay the claims arising from the IOF Combo 100 loans.  United Guaranty introduced evidence that the contract was severable—and even elicited testimony from SunTrust official Robert Partlow that *SunTrust* viewed the contract as severable, in that a breach as to one loan would not necessarily affect the parties' obligations as to other loans.  JA395.  United Guaranty also introduced evidence that the breach involved only a very small fraction of all the loans encompassed by the contract, and that it would soon reach the MCL for most pools in any event—thus ensuring that SunTrust received 97% of the maximum possible payout under the contract.  JA1184-86 & n.65.

After the trial was over, the district court *sua sponte* raised the question whether United Guaranty had committed a different type of breach.  Although SunTrust had never made the allegation, the district court ordered the parties to

11

brief the question whether United Guaranty had breached the implied covenant of good faith and fair dealing by collecting premiums under the policy without intending to pay claims. JA302-03.

Over United Guaranty's objection that it was improper to inject this new theory of breach into the case, the district court determined that United Guaranty had breached the implied covenant. JA1118, 1158-79. The court then held that the *combined* effect of United Guaranty's breach of contract *and* its breach of the implied covenant of good faith and fair dealing amounted to a "first material breach" of the insurance contract. JA1183-84 & n.64. The district court rejected United Guaranty's argument that there was no first material breach because the insurance policy was severable. JA1189-90, 1198-1206. It also rejected United Guaranty's argument that the breach was not material because it only affected a very small percentage of all the loans encompassed by the policy, and because SunTrust would be paid more than 97% of the maximum that it could have been paid absent the breach. JA1181-82, 1184-89. The district court thus concluded that even though SunTrust had already collected hundreds of millions of dollars in payments under the policy, United Guaranty's first material breach with respect to the approximately 1,300 loans lacking DU approval excused SunTrust from paying premium installments going forward on the remaining 100,000 loans covered by the policy. JA1206.

12

The district court awarded SunTrust approximately $34 million in breach-of-contract damages plus nearly $6 million in prejudgment interest, for a total award of $40,133,262. JA1233. It also entered judgment in SunTrust's favor on United Guaranty's counterclaim, based on the first material breach finding. JA1118, 1207. But the court refused to reduce the breach-of-contract damages by the amount that SunTrust saved by being released from its contractual obligation to pay premiums. JA1213.

### 4.    This Court Affirms The Breach-Of-Contract Ruling And Vacates The First Material Breach Ruling.

This Court affirmed in part and vacated in part, with Judge Bredar writing separately. *See SunTrust Mortgage, Inc. v. United Guaranty Residential Ins. Co. of N.C.*, 508 Fed. App'x 243 (4th Cir. 2013). By a 2-1 vote, the Court affirmed the grant of summary judgment to SunTrust on the breach-of-contract claim, holding that DU approval was not a requirement for coverage. 508 Fed. App'x at 254. Judge Bredar dissented on this issue, explaining that the case should have gone to the jury and that United Guaranty should have been allowed to introduce evidence of SunTrust's fraud. *Id*. at 257-58.

The Court "vacate[d] the district court's judgment in favor of SunTrust Mortgage as to first material breach." 508 Fed. App'x at 254. The Court held that SunTrust had waived any claim that United Guaranty breached the implied covenant of good faith and fair dealing by failing to raise the issue during trial. *Id*.

13

at 252.  The Court explained that because the first material breach ruling depended

on the "*cumulative* effect of United Guaranty's breaches"—that is, both the breach

of contract and the breach of the implied covenant—the judgment could not stand.

*Id*. at 252 (emphasis added).

SunTrust did not argue on appeal that the breach of contract finding,

standing alone, was sufficient to constitute a "first material breach."  Accordingly,

once this Court determined that the district court erred by relying on the breach of

good faith and fair dealing, the appeal was resolved.  The Court had no need to

address, and did not address, United Guaranty's arguments regarding severability,

materiality, and the need for a damages reduction—arguments that the Court

would have had to consider if SunTrust had argued that the breach-of-contract

finding by itself was sufficient to constitute a first material breach.  Instead, the

Court explained with regard to the damages reduction, because it had vacated the

first material breach ruling, "the district court's damages award does not need to

reflect any premium savings, as they no longer exist," and United Guaranty's

arguments were therefore "moot."  *Id*. at 254.

Judge Bredar endorsed "the majority's reasoning as to the failure of

SunTrust Mortgage's affirmative defense" of first material breach.  He observed

that "it would be unconscionable to require United Guaranty to continue to provide

insurance coverage on loans for which SunTrust Mortgage is excused from paying renewal premiums." *Id*. at 258.

> **5.** **Despite SunTrust's Failure To Raise The Argument On Appeal, The District Court Enters Judgment For SunTrust On The Theory That The Breach Of Contract, Standing Alone, Is A First Material Breach.**

In light of this Court's mandate, and SunTrust's failure to argue that the breach of contract by itself amounted to a first material breach, United Guaranty moved the district court to enter judgment in its favor on the counterclaim. United Guaranty pointed out that the district court had previously held that the insurance policy "clearly and unambiguously requires [SunTrust]" to continue paying premiums, and had granted judgment to United Guaranty on that basis. JA1478. United Guaranty explained that while the district court had subsequently overridden that ruling based solely on its first material breach determination, now that the Fourth Circuit had rejected first material breach, the district court's original grant of judgment to United Guaranty should be automatically reinstated. JA1494-95.

The district court declined to enter judgment for United Guaranty. Instead, it again entered judgment for SunTrust based on first material breach, this time holding that the breach of contract finding, standing alone, amounted to a first material breach. JA1496-1505, 1506-07. The court concluded that it was free to reinstate the judgment notwithstanding the mandate rule, which prohibits litigation

15

on remand of issues that were waived in the court of appeals, or that were resolved (explicitly or implicitly) by the court of appeals. JA1489-96. The court acknowledged that the Fourth Circuit's "decision contains no explicit remand" to the district court for further proceedings. But it interpreted the decision as "leaving for resolution on remand" the argument that SunTrust had failed to present to this Court—whether the breach of contract, standing alone, amounted to a first material breach. JA1489, 1495.

Turning to the merits, the district court reaffirmed its prior ruling that the policy was not severable. JA1502-03 n.15 (citing 806 F. Supp. 2d at 904-11). And it held that the breach of contract was material because it "went to the root of the insurance contract and defeated its essential purpose." JA1501. The district court entered final judgment on June 3, 2014. JA1508-09.[1]

---

[1] At the same time it issued its decision reinstating its judgment for SunTrust, the district court issued an opinion declining to recuse from the case. JA1459. In November 2013, the court had notified that parties that, during the pendency of this litigation, it had made claims in class actions against American International Group (AIG). JA1462-64. AIG is United Guaranty's parent and had been a named defendant on the first three versions of the complaint. JA79.

## SUMMARY OF ARGUMENT

**I.**     The mandate rule bars district courts from "reconsider[ing] issues the parties failed to raise on appeal" and "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) (quotation marks omitted). By reinstating its first material breach ruling, the district court violated both prohibitions.

The district court granted judgment to SunTrust based on an argument that SunTrust waived in the prior appeal. In its original ruling, the district court had held that it was "the combined—or cumulative—effect" of (1) the breach of contract and (2) the breach of the implied covenant of good faith and fair dealing that amounted to a first material breach. JA1183 & n.64. On appeal, SunTrust *did not argue* that the breach of contract, standing alone, amounted to a first material breach. *See* JA1378-94. Thus, once this Court held that the implied covenant finding could not stand, it vacated the first material breach finding, declined to address or dismissed as moot United Guaranty's remaining arguments concerning first material breach, and terminated the appeal without any suggestion that there would be further proceedings concerning the first material breach defense. *See* 508 Fed. App'x at 251-54. By reinstating the first material breach judgment based on the argument that the breach of contract, standing alone, *was* a first material

17

breach, the district court erred by allowing SunTrust to prevail on an argument that it had waived on appeal.

Even if SunTrust had preserved the argument, it was impliedly rejected by this Court. Had the Court viewed the breach of contract as potentially sufficient, standing alone, to amount to a first material breach, the Court could not have vacated the judgment merely because it had rejected the implied covenant finding. Rather, it would have needed to address United Guaranty's other arguments concerning severability and materiality. When this Court intends for a district court to conduct further proceedings—such as analyzing possible alternative grounds that could support the judgment—it says so in its opinion. It did not do so here. The district court's reinstatement of its judgment—based on an argument that could have been presented to this Court but was not—threatens to make the Court's prior ruling on first material breach a meaningless exercise and a pointless waste of judicial resources.

**II.**    The district court further erred in finding that United Guaranty committed a first material breach.

First, the district court incorrectly held that the contract was not severable. An insurance contract is entire when the risk of one item covered by the contract affects the risk on the other items, whereas a contract is severable if the risks are *not* linked. *See E. Augusta Mut. Fire Ins. Co. v. Hite*, 250 S.E.2d 348, 351 (Va.

18

1979).  Here, as the district court acknowledged, JA1203-05, the risk presented by each loan is independent of the risk presented by any other loan; that is to say, the risk that one borrower may default is unaffected by the risk that a different borrower may default.  For that reason, the contract is severable on a loan-by-loan basis and United Guaranty's breach with respect to approximately 1,300 loans does not warrant declaring the contract unenforceable as to the remaining 100,000 loans covered by the policy.

Second, even if the contract were not severable, the district court erred in deeming the breach material.  When a breach arises from a failure to provide full consideration, the test of materiality is whether the partial consideration "may be deemed to be no substantial consideration."  *Neely v. White*, 14 S.E.2d 337, 341 (Va. 1941) (quotation marks omitted).  Here, it is undisputed that United Guaranty made hundreds of millions of dollars in claim payments to SunTrust under the contract; that the breach involved less than 2% of the claims covered by the contract; and that SunTrust ultimately would have received more than 97% of the consideration ($280 million out of $287 million) it could have expected to obtain absent the breach.  Moreover, in determining materiality, Virginia courts also look to whether the nonbreaching party can be made whole by money damages.  In this case, SunTrust has *already* been made whole by money damages:  United Guaranty has paid $34 million in breach of contract damages, along with $6

19

million in prejudgment interest—an award that the district court acknowledged would "mak[e] [SunTrust] whole for the loss of timely payment of insurance." JA1223.

    **III.**    The district court erred in declining to reduce SunTrust's breach-of-contract damages by the amount in premiums that SunTrust was excused from paying as a result of the first material breach ruling.  Because damages in a contract case should place the non-breaching party in only as good a position as he would have been in had the contract been performed, a damages award must take into account any savings realized by the plaintiff not having to perform his own obligations.  Here, the first material breach ruling, if affirmed, would enable SunTrust to avoid $92 million in future premium installment payments it would otherwise owe under the contract, including installment payments still owed for loans as to which SunTrust received claim payments.  Those savings should be applied to SunTrust's breach-of-contract damages award, reducing that award to zero.  By declining to make this reduction, the district court put SunTrust in an astronomically better position than it would have been in had the contract been performed—a result that Judge Bredar rightly described as "unconscionable."  508 Fed. App'x at 258.

## STANDARD OF REVIEW

"A district court's interpretation of an appellate court's mandate is reviewed de novo." *S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356 F.3d 576, 583 (4th Cir. 2004). The Court reviews "a judgment following a bench trial under a mixed standard of review—factual findings may be reversed only if clearly erroneous, while conclusions of law, including contract construction, are examined de novo." *Roanoke Cement Co. v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005). Legal errors in calculating damages are also reviewed de novo. *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 427 (4th Cir. 2010).

## ARGUMENT

### I.    The Mandate Rule Forecloses The District Court's Reinstatement Of The Vacated Judgment.

"Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). This "basic" principle—known as the "mandate rule"—is "a more powerful version of the law of the case doctrine," and it "prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest." *Doe v. Chao*, 511 F.3d 461, 464-65 (4th Cir. 2007) (quotation marks omitted). A "rule requiring a trial court to follow

21

an appellate court's directives that establish the law of a particular case is necessary to the operation of a hierarchical judicial system" and "serves the interest of finality in litigation." *Id.* at 465 (quotation marks omitted). "Repetitive hearings, followed by additional appeals, waste judicial resources and place additional burdens on hardworking district and appellate judges." *Id*. at 465-66 (alteration and quotation marks omitted).

The mandate rule prohibits a district court from considering an issue in two circumstances, both of which apply here. First, the mandate rule prohibits district courts from "reconsider[ing] issues the parties failed to raise on appeal." *S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004). Second, the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id*. (quotation marks omitted). By reinstating the first material breach judgment for SunTrust based on a theory that SunTrust failed to raise on appeal *and* that was impliedly decided by this Court, the district court violated both aspects of the mandate rule. This Court should reverse and direct entry of judgment for United Guaranty.

### A.  SunTrust Failed To Argue In The Prior Appeal That The Breach Of Contract Finding, Standing Alone, Amounted To A First Material Breach.

The mandate rule forecloses a party from litigating on remand an argument that it failed to present to the court of appeals. It is well settled Fourth Circuit law

that "any issue that could have been but was not raised on appeal is waived and thus not remanded." *Doe*, 511 F.3d at 465 (quotation marks omitted); *see also S. Atl. P'ship of Tenn., LP*, 356 F.3d at 586 (district court may not resurrect issues that a party "failed to raise and pursue in the [prior] appeal"). The reason for this rule is clear: "[I]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *United States v. Ben Zvi*, 242 F.3d 89, 96 (2d Cir. 2001) (quotation marks omitted). Here, SunTrust plainly could have—but did not—argue that the breach of contract finding, standing alone, was itself a first material breach and thus was sufficient to affirm the judgment. Accordingly, the district court erred when it reinstated the first material breach judgment for SunTrust based on this argument.

The prior appeal was litigated under the shared universal understanding—by the parties, the district court and this Court—that the breach-of-contract finding, standing alone, *was not sufficient* to constitute a first material breach. United Guaranty argued repeatedly that both of the alleged breaches were necessary to the first material breach ruling. *See* JA1291 ("The court based its ruling on two purported breaches, *both* of which were necessary to its conclusion that United Guaranty committed a first material breach."); JA1271 ("The court held that the *combined* effect of United Guaranty's alleged breach of contract and supposed

23

breach of the implied duty of good faith and fair dealing amounted to a 'first material breach' of the contract."). United Guaranty explained that overturning *either* alleged breach would require the judgment in favor of SunTrust to be vacated. *See* JA1291 ("For the reasons discussed above in Part I, the district court erred in granting summary judgment on SunTrust's breach of contract claim, and the first material breach ruling must be vacated because it depended on the *combined* effect of the alleged breach of contract and the alleged breach of the duty of good faith and fair dealing."); *id*. at 1291-92 (arguing that the judgment could not stand because the district court erred in ruling that United Guaranty breached the implied duty of good faith and fair dealing). United Guaranty reiterated in its reply brief that "[t]he district court based its first material breach finding on 'the combined—or "cumulative"—effect' of the two purported breaches," and that if the Fourth Circuit "vacate[d] *either* breach finding, it must set aside the first material breach determination." JA1425 (quotation marks and citations omitted).[2]

These arguments placed SunTrust on notice of United Guaranty's position that both alleged breaches were necessary to support the first material breach

---

[2] The parties' briefs from the prior appeal were submitted to the district court and are reproduced in full in the Joint Appendix. *See* JA1237 (United Guaranty opening brief); JA1324 (SunTrust response brief); JA1408 (United Guaranty reply brief).

judgment.  If SunTrust disagreed with that position and believed that the breach of

contract, standing alone, amounted to a first material breach, SunTrust had the

obligation to make that argument before this Court.  But SunTrust never presented

this argument on appeal—a point its counsel was forced to concede before the

district court.  *See* JA1448 (admitting that "[n]o one raised that issue").[3]

   If SunTrust had raised the argument it makes now—that the breach of

contract, standing alone, was a first material breach—it would have allowed this

Court to affirm without having to decide the question whether the district court

erred by finding that United Guaranty breached the implied covenant.  But

SunTrust never suggested, in its brief or at oral argument, that this Court could

decline to address the implied-covenant question because the judgment could be

affirmed on an alternative ground.  The consequence of SunTrust's silence was that

this Court devoted pages of its opinion to resolving the first material breach

question on the basis that the district court erred by finding a breach of the implied

---

[3] In attempting to excuse its failure to raise the argument on appeal, SunTrust claimed that it was hamstrung by the word limit for appellate briefs.  *See SunTrust Mortgage, Inc. v. United Guaranty*, No. 3:09-cv-529, Docket No. 636, at 12 (complaining that United Guaranty "raised numerous issues" and "SunTrust was required to fully address each issue [on appeal] in one 17,000-word brief").  This is not a legitimate excuse, particularly since this Court, in the prior appeal, granted the parties leave to file overlength briefs of 17,000 words and SunTrust filed a brief containing 16,992 words.

covenant—a discussion that SunTrust now says was unnecessary dictum and a waste of time because the first material breach judgment could have been upheld solely based on the breach of contract finding.

This Court has held that where it vacates a ruling of the district court, the appellee cannot assert on remand that the ruling should be reinstated based on an argument that the appellee failed to raise on appeal. In *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co*., 510 F.3d 474 (4th Cir. 2007), the Court held that Volvo had waived the argument that the district court's judgment could be reinstated on an alternative ground because, as the appellee in the initial appeal, Volvo had failed to raise that argument before the Fourth Circuit. *See id*. at 481 (explaining that because Volvo had failed to raise an argument in support of the district court's judgment, it had "waived its contention" and "was not entitled to raise it on remand" as a basis for reinstating the judgment). Similarly, in *United States v. Pileggi*, 703 F.3d 675 (4th Cir. 2013), the Court held that a party that had been the appellee during a prior appeal could not "use the accident of a remand to raise an issue that it could just as well have raised in the first appeal." *Id*. at 680 (quotation marks and alterations omitted). Allowing such tactics would encourage strategic gamesmanship and waste judicial time and resources by subjecting the parties and the court to duplicative and overlapping appeals, exactly as has occurred here.

In sum, SunTrust had both the opportunity and the obligation to argue during the prior appeal that United Guaranty's alleged breach of contract, standing alone, was sufficient to support the first material breach ruling.  Because SunTrust did not raise this argument during the prior appeal, it was waived, and the district court erred in reinstating the judgment based on this theory.

### B.    This Court Necessarily Determined In The Prior Appeal That The Breach Of Contract, Standing Alone, Was Not A First Material Breach.

Even if SunTrust's waiver could somehow be ignored, this Court's prior ruling impliedly resolved the question presented by this appeal and necessarily rejected the argument that the breach of contract could suffice to establish a first material breach.  "The mandate rule does not simply preclude a district court from doing what an appellate court has expressly forbidden it from doing." *S. Atl. Ltd. P'ship of Tenn., LP*, 356 F.3d at 584.  It also precludes a district court from "alter[ing] rulings impliedly made by the appellate court." *Id.*

The most telling indicator that this Court impliedly resolved the question whether the breach of contract by itself could establish first material breach is that the Court did *not* remand with instructions to the district court to conduct further proceedings on first material breach.  When this Court wishes a district court to consider an alternative ground for resolution on remand, it says so.  For example, in *Jennings v. University of North Carolina*, 482 F.3d 686 (4th Cir. 2007) (en

27

banc), the Court "declin[ed] to consider" an "alternative argument" raised by the defendants on appeal and stated that it would "allow the district court to address it in the first instance on remand." *Id*. at 702. Similarly, in *Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006), the Court held that a "remand [was] appropriate" so that a potential alternative ground for dismissing a claim could be "presented to the district court in the first instance." *Id*. at 200 n.9; *see also, e.g.*, *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 220 n.3 (4th Cir. 2006) ("The defendants also argue several alternative grounds for affirmance. Although we are not precluded from addressing these arguments, we deem it more appropriate to allow the district court to consider them, if necessary, in the first instance on remand."). Of course, these cases share a common element that is absent from this case: the alternative ground for affirmance was presented to the Court of Appeals. Here, this Court could hardly have been expected to remand with instructions to consider whether the breach of contract was itself a first material breach because SunTrust never presented that argument to this Court.

The substance of the Court's prior ruling reinforces the conclusion that, if the Court had intended for the district court to conduct additional proceedings on remand regarding first material breach, it would have said so. The Court vacated the first material breach judgment based solely on its determination that SunTrust had waived its reliance on the implied covenant of good faith. If the breach of

contract had been potentially sufficient, standing alone, to support the first material breach ruling, the Court presumably would not have vacated the judgment merely because the implied covenant of good faith claim had been waived. Rather, the Court would have analyzed whether United Guaranty's breach of contract was sufficient, standing alone, to support the first material breach ruling. In doing so, the Court would have addressed United Guaranty's arguments that the first material breach ruling could not stand because the contract is severable on a loan-by-loan basis, and because the breach of contract was not material in any event. *See* JA1305-08. But the Court did not address those arguments, and instead vacated the first material breach ruling based entirely on its conclusion that the implied covenant of good faith claim had been waived. Thus, the Court impliedly concluded that the breach of contract alone could not support the first material breach ruling.

That conclusion is buttressed by the Court's statement that United Guaranty's challenge to the award of damages on SunTrust's breach of contract claim was "moot." 508 Fed. App'x at 254. United Guaranty had argued on appeal that, if the judgment in SunTrust's favor were allowed to stand and SunTrust were "excused from paying $92 million in premiums because United Guaranty committed a first material breach, that amount must be deducted from [SunTrust's] damages." *Id.* This Court deemed this argument "moot" because it had "vacate[d]

29

the district court's judgment on the first material breach issue." *Id*. But United Guaranty's argument regarding damages would *not* have been moot if it were still possible to rule that United Guaranty committed a first material breach. Thus, this Court viewed the first material breach issue as having been conclusively resolved by its opinion.

The district court's reinstatement of its first material breach judgment runs the risk of making this Court's decision on the issue a meaningless exercise. There was no reason for this Court to have analyzed and resolved whether SunTrust had waived the implied-covenant claim if the district court's decision could simply have been affirmed on the alternative ground that the breach of contract alone was a first material breach. The mandate rule is intended to prevent "[r]epetitive hearings, followed by additional appeals [that] waste judicial resources and place additional burdens on hardworking district and appellate judges." *Doe*, 511 F.3d at 465-66 (quotation marks and alteration omitted). Yet that is precisely what has happened here. The arguments and issues in this appeal were presented in the last appeal. The parties have now been forced to re-litigate whether the first material breach ruling cannot stand because the contract is severable on a loan-by-loan basis; whether the first material breach ruling cannot stand because the breach of contract was not material in any event; and whether SunTrust's damages award must be reduced by the premiums it will save in the event the first material breach

30

ruling is affirmed.  It is inconceivable that, in resolving the first material breach issue during the prior appeal, this Court intended to invite a duplicative appeal on the very same issues that had already been briefed and argued.

## II.    Even If The First Material Breach Issue Remains Open, United Guaranty Is Entitled To Judgment.

The mandate rule forecloses SunTrust's argument.  But even if this were an open question, United Guaranty is entitled to judgment because its breach was not material.  First, the insurance policy is severable on a loan-by-loan basis.  Second, the breach was not material in any event because United Guaranty paid hundreds of millions of dollars under the contract and SunTrust's harm is readily compensable through money damages.

### A.    There Was No First Material Breach Because The Insurance Contract Is Severable.

The first material breach ruling must be reversed because the insurance contract is severable on a loan-by-loan basis.  If an insurance policy is severable, "only the part of the policy directly affected by or connected with the breach will be avoided."  2 *Couch on Insurance* § 23.1 (3d ed.).  Here, because the policy is severable, any breach arising from nonpayment of a claim on *one* loan is not a breach with respect to the parties' obligations on the thousands of *other* loans covered by the contract.  For that reason, the district court's first material breach ruling—which relied on its determination that the contract is "entire" and not

severable—cannot stand. United Guaranty's breaches with respect to the 1,305 IOF Combo 100 loans lacking DU approval are immaterial to—and cannot excuse SunTrust from paying premiums with respect to—the approximately 100,000 other loans covered by the policy.

Severability is a critical question in insurance cases because the consequences of a severability determination can be immense. Insurance policies often provide coverage for hundreds or thousands of discrete items, claims or circumstances. For example, a homeowner's policy might cover all of the owner's possessions, whereas a corporation's liability policy could cover a universe of possible claims that might be asserted against the company. If an insurance policy is deemed nonseverable, an erroneous failure to pay a single claim could, if material, cause the entire policy to be voided. *See United Guaranty Mortg. Indemnity Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1192 (C.D. Cal. 2009) (emphasizing the danger of deeming insurance contracts nonseverable, in that opportunistic litigants might seek windfalls by claiming that a small breach of one provision rendered the entire contract unenforceable). While a finding of nonseverability would in some cases benefit insureds, in other cases it would benefit insurers, who could use the insured's failure to pay a small portion of the total premium to rescind the contract entirely, leaving the insured with no coverage.

In Virginia, severability turns on the "intention of the contracting parties." *E. Augusta Mut. Fire Ins. Co. v. Hite*, 250 S.E.2d 348, 351 (Va. 1979). When, as here, an insurance policy covering multiple items does not expressly state the parties' intent, the Virginia Supreme Court has held that severability "depends upon the nature and entirety of the risk." *Id.* at 352. "[W]here the property is so situated that the risk of one item affects the risk on the other, the contract is entire and not divisible." *Id.*; *see also* 2 *Couch* § 23:1 (insurance policy may be severable "where it covers several different kinds of risks or property at different locations"). A classic example of a nonseverable insurance contract that involves interdependent risks is a homeowner's policy that covers the home as well as the items inside the home. Indeed, that was the fact pattern in *East Augusta* itself, where the court found that the risks of loss as to the various items covered by the policy were interdependent and that the contract was therefore nonseverable.

Here, in contrast, the mortgage loans covered by the contract in this case are *not* "so situated that the risk of one item affects the risk on the other." *East Augusta*, 250 S.E.2d at 352. The evidence at trial confirmed what common sense suggests: the risk presented by each of those loans is independent of the risk presented by any other loan. In other words, the risk that any particular borrower will default on his loan has no bearing on the risk that any other borrower will default on a different loan. *See* JA455-58. In fact, the district court *agreed* that

33

"the risk associated with any one particular loan insured under the policy did not actually depend on the risk associated with any of the other loans insured under the policy, since one loan's default was an event unto itself." JA1203-04. That finding should have been the end of the severability analysis, and the district court should have held the policy to be severable, as another court did in a very similar case. *See United Guaranty*, 660 F. Supp. 2d at 1192 (determining that a United Guaranty mortgage insurance policy—virtually indistinguishable in all material respects from the policy at issue here—was severable).

The district court erred, however, in going beyond the interdependent-risk test and examining whether the *premiums* that SunTrust paid for each loan were interdependent. *See* JA1202 (explaining that the contract "bas[es] the rate factor for each loan on the aggregate cumulative performance of all the loans insured under the policy"). The district court cited no authority suggesting that interdependent premiums are relevant to severability, and its approach amounts to clear legal error. It is the "nature and entirety of the *risk*" associated with each loan—not the procedure for calculating the premiums—that determines whether the policy is severable. *E. Augusta*, 250 S.E.2d at 352 (emphasis added).

Even SunTrust, during the prior appeal, declined to defend the district court's conclusion that the contract was "entire." Instead, SunTrust agreed with United Guaranty that the contract *is* severable, but on a pool-by-pool basis, not a

34

loan-by-loan basis.  *See* JA1391 (SunTrust "always has acknowledged that the policy is severable pool-by-pool").  SunTrust is mistaken, however, because the contract itself, as well as the parties' course of dealing, make clear that the parties regarded the contract as severable on a loan-by-loan basis.  That is why coverage is provided and may be cancelled on a loan-by-loan basis (JA172, 178-79, 181); why SunTrust submits claims only with respect to individual loans (JA463-64); and why, if United Guaranty is not liable for a claim on an individual loan, it rescinds coverage on that loan, returns premiums on that loan, and deducts a proportion of that loan amount from the MCL—and the policy remains in effect as to SunTrust's other loans.  JA464, 485, 496.

Even if SunTrust could establish—which it cannot—that the contract is severable on a pool-by-pool basis, the district court's first material breach ruling would have to be reversed.  That is because the district court analyzed materiality with regard to the contract as a whole—and never analyzed whether United Guaranty committed a material breach *with respect to each pool*.  Each pool has a unique composition of loans, and IOF Combo 100 loans lacking DU approval are not uniformly distributed among the pools.  JA1098-1116.  Thus, if the contract were severable pool-by-pool, the materiality of United Guaranty's alleged breaches would vary from pool to pool.  Absent that analysis, it is impossible to conclude, as

the district court did, that SunTrust should be excused from paying premiums on *all* of the pools.

**B.    Even If The Contract Were Not Severable, The District Court Erred In Ruling That The Breach Was Material.**

Only a *material* breach can deprive a party of its right to enforce a contract. *Horton v. Horton*, 487 S.E.2d 200, 203 (Va. 1997).  In a case like this one, where the breach involved a failure to pay the full consideration due, the test of materiality is whether there was a "failure of consideration of such a degree that the remaining consideration may be deemed to be no substantial consideration." *Neely*, 14 S.E.2d at 341 (quotation marks omitted).  The breach is not material, in contrast, when it "goes only to a minor part of the consideration," and "is of such a nature as to be readily compensable by way of counterclaim" for damages.  *Id.* at 340.  Courts therefore look to whether the nonbreaching party may be fully compensated through an award of money damages; if so, then there is no need to rely on the equitable remedy of first material breach.  *Id.*  Thus, the Virginia Supreme Court in *Neely* held that a failure of consideration was not material because "approximately ninety-three per cent [$14,000 out of $15,000] of the

36

contract had been performed" by the breaching party, and because the

"unperformed portion [was] easily ascertained and [was] liquidated." *Id.*[4]

In this case, even if the contract were not severable on a loan-by-loan

basis—and materiality were assessed with regard to the entire contract—the breach

was not material because United Guaranty paid substantial consideration and its

breach concerned only a very small portion of the overall agreement, and because

SunTrust has already been fully compensated through the damages award.

### 1. Hundreds Of Millions Of Dollars In Claims Payments Is "Substantial Consideration."

The Virginia Supreme Court has held that where, as here, the alleged breach

is a failure to provide the full consideration due under the contract, that failure is

material only if it is "of such a degree that the remaining consideration may be

deemed to be *no substantial consideration*." *Neely*, 14 S.E.2d at 341 (emphasis

added and quotation marks omitted). In *Horton v. Horton*, 487 S.E.2d 200, 203

(Va. 1997), the Virginia Supreme Court reaffirmed *Neely*'s holding that a breach is

---

[4] Although the Virginia Supreme Court has not formally adopted the factors for determining first material breach set forth in Restatement (Second) of Contracts § 241, the court's analysis in *Neely* and *Horton* tracks the first two factors: "the extent to which the injured party will be deprived of the benefit which he reasonably expected" and "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived." Restatement (Second) of Contracts § 241(a)-(b).

not material when it goes "only to a minor part of the consideration."  487 S.E.2d at 203.

Here, it is undisputed that United Guaranty paid hundreds of millions of dollars in claim payments to SunTrust under the contract before the breach occurred—and paid many millions more after the breach.  Under a straightforward application of *Neely*, United Guaranty's hundreds of millions of dollars in claim payments cannot possibly "be deemed to be no substantial consideration," 14 S.E.2d at 341 (quotation marks omitted), and therefore the breach was not material.  Indeed, even were one to credit the district court's statement that United Guaranty's breach involved $63 million in *delayed* payments, JA1498-99, that does not change the fact that the hundreds of millions of dollars United Guaranty paid under the contract plainly amounts to "substantial consideration."

This common-sense conclusion is reinforced by the fact that the breach involved less than 2% of the loans covered by the contract.  Although the contract covered more than 100,000 loans, United Guaranty's breach arose from its denial of claims concerning only approximately 1,300 loans.  JA1192, 1205.  SunTrust therefore was denied the benefit of the contract with respect to, at most, 1.5% of the covered loans.  In other words, SunTrust received the benefit of the contract— insurance coverage—for more than 98.5% of its loans.

That SunTrust was not denied the benefit of its contract with United
Guaranty is equally clear if one considers the claim payments that SunTrust
received as a percentage of maximum claim payments allowed.  There is no
dispute that, even accounting for United Guaranty's breach, SunTrust ultimately
would have received nearly all of the claim payments to which it was entitled
absent the breach, and thus would have received the overwhelming portion of the
benefit that it bargained for.  JA434, 528.  That is because whereas United
Guaranty failed to pay the claims involving loans that were not DU approved, it
paid *other* claims and ultimately reached the Maximum Cumulative Liability
("MCL") ceiling.  Although the breach caused the MCL ceiling to be reduced from
$287 million to $280 million, that is not material because United Guaranty's
payments to SunTrust would still have amounted to more than 97% of the
consideration that SunTrust could have expected under any circumstances.  JA434,
529.  Because the Virginia Supreme Court in *Neely* held that paying 93% of the
consideration due is not a material breach, it follows *a fortiori* that paying more
than 97% of the consideration due is not a material breach either.

### 2.     The Harm To SunTrust Is "Easily Ascertained" And "Readily Compensable" In Money Damages.

In determining whether a breach is material, the Virginia Supreme Court
also looks to whether the non-breaching party's injury is "easily ascertained" and

"readily compensable" in money damages. *Neely*, 14 S.E.2d at 340. "A court is less likely to characterize a breach as material where . . . the breach may be paid for in damages" because those damages provide compensation for the "benefit that [the injured party] justifiably expected." II E. Allan Farnsworth, *Farnsworth on Contracts* § 8.16, at 519-20 (3d ed. 2004) (quotation marks omitted).

Here, there can be no dispute that SunTrust's injury is easily ascertainable and readily compensable; indeed, the Court has already ascertained the exact amount of the injury and SunTrust has already been fully compensated for the breach. After this Court's decision in the prior appeal, United Guaranty paid SunTrust full compensation for the breach—$34 million, plus an additional $6 million in prejudgment interest.

For that reason, the district court was wrong to base its materiality decision on the delay in some of the payments. The district court stated that even though SunTrust would ultimately have received payments very close to the maximum permissible under the contract, the breach was still material because some of those payments were delayed, and SunTrust had bought the insurance to protect itself in the event of a market downturn and needed the money at the time rather than months later. JA1497-99. But the delay—which concerned only a fraction of the total payments—cannot establish materiality, because any harm from the delay was fully remedied by the award of prejudgment interest. The district court itself

40

recognized this point, explaining that its award of prejudgment interest will

"mak[e] [SunTrust] whole for the loss of timely payment of insurance." *See*

JA1223.  Indeed, in *Neely* itself, the Virginia Supreme Court held that the

defendant's failure to make timely payments was not a material breach because it

was "readily compensable by way of" money damages.  14 S.E.2d at 340.

Upholding the first material breach finding would give SunTrust an extreme

and unjustified windfall.  SunTrust has already obtained all the benefits of the

contract:  it received hundreds of millions of dollars in claim payments from

United Guaranty, as well as a $34 million breach-of-contract award and a $6

million prejudgment interest award that ensured SunTrust was put in as good a

position as it would have been had the contract been fully performed.  *See*

Restatement (Second) of Contracts § 347 cmt. a (damages in a contract case should

place the non-breaching party "in as good a position as he would have been in had

the contract been performed").  Because the damages award fully remedies

SunTrust's injury, there is no reason to award SunTrust an additional, equitable

remedy by excusing it from performing its obligation under the contract to make

the premium installment payments.  Where damages not only *can* be used, but in

fact *have* been used, to fully compensate SunTrust for the breach, application of

the first material breach doctrine is improper.

Moreover, in assessing materiality, the Restatement looks to "the extent to which the party failing to perform or to offer to perform will suffer forfeiture." Restatement § 241(c); *see also* II Farnsworth § 8.18, at 527 (courts are less likely to find materiality "when the breach comes after [the breaching] party has relied on the contract by performance or otherwise than when the breach comes before that party has relied").[5]  Here, United Guaranty would suffer forfeiture from a material breach finding.  The contract has been in place since 1998, and United Guaranty performed under the contract for years prior to the breach, paying hundreds of millions of dollars in claims to SunTrust.  But a material breach finding would cause United Guaranty to lose $92 million in future installment premiums that were intended to partially compensate United Guaranty for the claim payments that it has already made.  *See* JA531; *see also* JA296 (district court finding that SunTrust chose to forgo "the option of paying a 'single lump sum premium' to insure its loans" and instead opted to "pay premiums in annual installments"); JA300.

---

5  As noted above, the Virginia Supreme Court has not formally adopted Restatement Section 241.  But Virginia appellate courts have looked to the Section 241 factors in assessing materiality.  *See, e.g.*, *Psychiatric Solutions of Va., Inc. v. Finnerty*, 676 S.E.2d 358, 367 n.5 (Va. Ct. App. 2009).

Had SunTrust paid a lump sum, it could not get a refund. It is only because United Guaranty agreed to SunTrust's request to ease its upfront burden by paying through installments that SunTrust is even in a position to argue first material breach. SunTrust should not be given a massive windfall—and United Guaranty should not be made to suffer a massive forfeiture—simply because of the fortuity that SunTrust paid through installments rather than through an upfront lump sum.

## III. If This Court Were To Affirm The First Material Breach Judgment, SunTrust's Damages Award Must Be Reduced By The Amount Of The Premiums It Is Excused From Paying.

The district court's first material breach ruling granted SunTrust a lottery-like windfall because it permitted SunTrust to enforce the provisions of the contract that benefit SunTrust and at the same time to disavow the provisions of the contract that benefit United Guaranty. Under the district court's rulings, SunTrust was awarded $40 million in damages and interest (for the unpaid claims) *and* was excused from paying $92 million in premiums. Even if this Court were to affirm the district court's latest first material breach finding, SunTrust's damages award must be reduced by its premium savings.

An example makes the district court's error clear: If a defendant agrees to sell a plaintiff a house for $1 million but fails to deliver the house, the plaintiff may ask to be awarded the house (specific performance) or the house's value (expectation damages). Alternatively, the plaintiff may seek to rescind the contract

43

and be excused from its obligation to pay $1 million (rescission or restitution). The plaintiff may *not* ask to be awarded the house *and* be excused from paying the $1 million. But that is precisely the effect of the district court's ruling in this case: SunTrust would keep the hundreds of millions of dollars that United Guaranty has already paid in claims and recover an additional $40 million in compensatory damages and interest, but also walk away from its remaining obligation to make $92 million in premium installment payments that it unquestionably owes.[6]

Nothing in Virginia or Fourth Circuit law supports such an unjust result. To the contrary, it is well-established that a court cannot both award a party the benefits of a contract *and* excuse that party from its corresponding obligations under that contract. *See, e.g.*, *Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise*, 239 F.2d 689, 694 (4th Cir. 1956) ("In this country it is generally recognized that an action by way of affirmance of the contract is a bar to the right to rescind. One who affirms a contract acknowledges that he entered into the same and is bound by all of its provisions.") (citations omitted); *Holz v. Coates Motor*

---

[6] In the prior appeal, SunTrust did not dispute that it would have paid an additional $92 million in premiums had the contract been performed. *See* JA1395-97 (arguing against reducing damages to account for saved premiums, but not disputing that the amount of saved premiums is $92 million). *See also* JA531 (undisputed trial testimony that SunTrust owed United Guaranty $92 million in future premiums), 1087-88.

*Co.*, 147 S.E.2d 152, 155 (Va. 1966) (a plaintiff cannot recover "inconsistent and mutually exclusive" remedies); *Hiss v. Friedberg*, 112 S.E.2d 871, 877 (Va. 1960) (plaintiffs awarded damages for breach of contract could not also recover fees they paid under the contract); *Tower Cleaning Servs., Inc. v. ePlus Grp., Inc.*, No. 209993, 2003 WL 1563440, at *2 (Va. Cir. Ct. Feb. 20, 2003) (a plaintiff who demonstrates material breach "ha[s] the right to elect whether or not to treat its own contract duties as having been immediately discharged *or* to treat the contract as not discharged and to sue for damages") (emphasis added).

In short, a remedy for breach of contract cannot place the injured party in a better position than if the contract had been performed. Yet that is precisely the effect of the district court's rulings. To avoid this outcome, in the event this Court affirms the first material breach finding, it must decrease SunTrust's damages award by the amount of unpaid premiums—with the result being that SunTrust cannot recover damages at all.[7]

---

[7] Of course, even this result would give SunTrust a substantial windfall, in that the amount it would avoid in premiums ($92 million) greatly exceeds the amount of its damages and interest award ($40 million).

45

## A. A Breach-Of-Contract Damages Award Must Be Reduced By Any Savings The Plaintiff Realized As A Result Of The Breach.

Damages in a contract case should place the non-breaching party "in as good a position as he would have been in had the contract been performed." Restatement § 347 cmt. a; *see also Hess Energy, Inc. v. Lightning Oil Co.*, 338 F.3d 357, 362 (4th Cir. 2003); *Marefield Meadows, Inc. v. Lorenz*, 427 S.E.2d 363, 366 (Va. 1993). Accordingly, "to avoid overcompensating the promisee, any savings realized by the plaintiff as a result of the defendant's breach, such as any costs that are avoided by the plaintiff not having to perform the balance of his or her own obligations under the contract, must be deducted from the recovery." 24 Richard A. Lord, *Williston on Contracts* § 64:2 (4th ed. 2002); *see also* Restatement § 347 (damages must be reduced by "any cost or other loss that [the plaintiff] has avoided by not having to perform").

These principles apply to cases involving a material (or "total") breach. As Farnsworth explains:

> If the injured party chooses to terminate the contract, it is said to treat the breach as *total*. The injured party's claim for damages for total breach takes the place of its remaining substantive rights under the contract. Damages are calculated on the assumption that neither party will render any remaining performance. They therefore compensate the injured party for the loss that it will suffer as a result of being deprived of the balance of the other party's performance, *minus the*

> *amount of any saving that resulted from the injured party not having*
> *to render any remaining performance of its own.*

II Farnsworth § 8.15, at 511-12 (second emphasis added); *see also Tower Cleaning*, 2003 WL 1563440, at *2 (denying award of damages in case of material breach because plaintiff did not "present evidence as to its costs of performance").

When, as here, the non-breaching party's obligation under the contract is to pay a sum of money, the cost avoided is "usually just the amount of money, if any, that the recipient is excused from paying the supplier because of the breach." III Farnsworth § 12.11, at 223. Thus, in *Kirk Reid Co. v. Fine*, 139 S.E.2d 829 (Va. 1965), the Virginia Supreme Court required that the damages be reduced by "the unpaid balance of the contract price." *Id.* at 837. "To hold otherwise," the court explained, "would put the [non-breaching party] in a better position than he would have occupied if the contract had been performed with precise exactness." *Id.*; *see also, e.g.*, *Sweeney Co. of Md. v. Engineers-Constructors, Inc.*, 823 F.2d 805, 812-13 (4th Cir. 1987) (applying Virginia law); *Ceres Assoc. Sales & Mktg. v. Veridian Corp.*, No. 208217, 2003 WL 22785037, at *3 (Va. Cir. Ct. Oct. 16, 2003); Restatement § 347 cmt. d, illus. 6, 7, 9 (providing examples in which the breach is a failure to pay money, and plaintiff's savings are deducted); III Farnsworth § 12.10, at 212-13 (similar examples involving breach by a buyer).

**B.    SunTrust's Damages Must Be Reduced By The Amount Of Premiums It No Longer Has To Pay.**

Under these well-settled principles, SunTrust is not entitled to a damages award in the event it is excused from paying premiums on the grounds of first material breach.  The parties stipulated that SunTrust's losses from United Guaranty's breach of contract were approximately $34 million.  JA1094.  United Guaranty introduced, without objection, undisputed evidence at trial that SunTrust owed United Guaranty approximately $92 million in future premiums—premiums that SunTrust is no longer obligated to pay if the district court's first material breach ruling is upheld.  JA531, 1087-88.  Because SunTrust's savings from being released from its obligation to pay premiums ($92 million) would be greater than its losses from the unpaid claims ($34 million plus $6 million in interest), an award of damages would be improper and would place SunTrust in a far better position than if the contract had been performed.

The district court disregarded these fundamental principles of contract law in holding that SunTrust's damages award should not be reduced by the premiums that SunTrust avoided as a result of its first material breach ruling.  The district court asserted several rationales for that conclusion, none of which has merit.

First, the district court stated that SunTrust had not "avoided" any premium payments based on United Guaranty's breach because SunTrust's "right to insurance coverage [was] independent of its continued payment of renewal

48

premiums." JA1215. This is wrong as a matter of law, in that SunTrust did not have the right to breach the contract by refusing to pay premiums, and then attempt to enforce the contract by demanding coverage for claims it had made before it breached. Moreover, the district court's approach is directly contrary to its ruling that the contract was not severable on a loan-by-loan basis. The district court treated the contract as *entire* for purposes of SunTrust's first material breach defense (such that nonpayment of claims freed SunTrust from its obligation to pay premiums on unrelated loans), but as *severable* for purposes of calculating SunTrust's damages (such that SunTrust's entitlement to claim payments is "independent" of its obligation to pay premiums on other insured loans). This cannot be. If SunTrust was excused from future performance because United Guaranty materially breached an entire contract, it cannot also be true that SunTrust's future performance and United Guaranty's breach were "independent." JA1215.

Second, the district court concluded that SunTrust's savings could only be considered if United Guaranty pled a claim for "recoupment." JA1217. "Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim." *First Nat'l Bank of Louisville v. Master Auto Serv. Corp.*, 693 F.2d 308, 310 n.1 (4th Cir. 1982). That

is, recoupment is an offsetting recovery based on some independent breach of the contract by *the plaintiff*. Here, however, United Guaranty did not need to plead recoupment because it is not seeking recoupment. Rather, United Guaranty is simply asking that SunTrust's damages be calculated accurately to take into account its savings from the breach and to avoid the unjustified windfall that would otherwise follow.

Third, the district court erred in concluding that "the evidence offered by [United Guaranty] on the amount of future premiums owed by [SunTrust] under the policy was undeveloped and was too speculative to permit any award of recoupment or off-set." JA1219 n.10. But it was *SunTrust's* burden to prove the amount it would save due to United Guaranty's breach as part of its affirmative damages case. *See Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009). Moreover, the evidence was not "speculative." *See* JA531, 543 (testimony of Jerry Bryant, United Guaranty vice president of risk management). Indeed, SunTrust *did not dispute* during the prior appeal that it avoided $92 million in premiums.

Fourth, even if the precise amount of avoided premium payments cannot be determined to the penny (owing to variable rate shifts), it is beyond dispute that the amount is vastly in excess of the $34 million breach of contract award. Thus, once the district court had excused SunTrust from its obligation to pay future premiums,

it should have reduced the breach-of-contract damage award to zero. Its failure to do so gave SunTrust an unjustified windfall contrary to Virginia law because it "put [SunTrust] in a better position than [it] would have occupied if the contract had been performed with precise exactness." *Kirk Reid Co.*, 139 S.E.2d at 837.

## CONCLUSION

This Court should reverse the judgment below and direct the district court to enter judgment for United Guaranty on Count IV of its counterclaim.

## REQUEST FOR ORAL ARGUMENT

United Guaranty respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34 and Local Rule 34(a).  Because this appeal presents complex and important questions of both state and federal law, and because more than $100 million (including interest) is at stake, United Guaranty respectfully submits that oral argument is necessary and will assist the Court.

Respectfully submitted,

/s/ Thomas H. Dupree, Jr.

William E. Wegner                    Thomas H. Dupree, Jr.
Christopher D. Dusseault             Philip S. Alito
GIBSON, DUNN & CRUTCHER LLP          GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue               1050 Connecticut Avenue NW
Los Angeles, CA 90071                Washington, DC 20036
(213) 229-7000                       (202) 955-8500

Wyatt B. Durrette, Jr.
J. Buckley Warden IV
DURRETTECRUMP PLC
1111 E. Main Street, 16th Floor
Richmond, VA 23219
(804) 775-6900

Dated:  July 28, 2014

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 11,913 words, as determined by the word-count function of Microsoft Word 2003, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14-point Times New Roman font.

Dated:  July 28, 2014

/s/ Thomas H. Dupree, Jr._____
Thomas H. Dupree, Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2014, a true and correct copy of the

foregoing Opening Brief of Appellant was served through the CM/ECF system on

the following:

Tillman J. Breckenridge
Reed Smith LLP
1301 K Street, NW
Washington, DC 20005

/s/ Thomas H. Dupree, Jr._____
Thomas H. Dupree, Jr.